FILED
9/14/18 3:17 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>FYBOWIN, LLC, *et al.*,[2]<br><br>　　　　　　Debtors. | Case No.: 18-21803-GLT<br>Chapter 11<br><br>(Jointly Administered) |
| FYBOWIN, LLC, *et al.*,<br>　　　　　Movants,<br>-vs-<br><br>THE HUNTINGTON NATIONAL BANK; FC MARKETPLACE, LLC A/K/A FUNDING CIRCLE USA, INC.; GORDON FOOD SERVICES, INC.; NATIONAL FUNDING, INC.; SMALL BUSINESS TERM LOANS, INC. A/K/A BFS CAPITAL; WELLS FARGO BANK N.A. D/B/A WELLS FARGO DEALER SERVICES; ON DECK CAPITAL; S&T BANK; WESTMORELAND COUNTY TAX CLAIM BUREAU; PNC BANK; INTERNAL REVENUE SERVICE; U.S. ATTORNEY'S OFFICE WESTERN DISTRICT OF PENNSYLVANIA; DEPARTMENT OF REVENUE COMMONWEALTH OF PENNSYLVANIA; PENNSYLVANIA LIQUOR CONTROL BOARD, FOOD & DRUG ADMINISTRATION; OFFICE OF THE UNITED STATES TRUSTEE; CINTAS CORPORATION; CONTINENTAL/NORTH SHORE II, L.P.; JACKSON WELDING SUPPLY COMPANY; LEASE CORPORATION OF AMERICA; RESTAURANT TECHNOLOGY, INC.; SOFRANKO ADVISORS; THE BUCCINI/POLLIN GROUP; ALWAYS A HOME GAME; BEVERAGE DISTRIBUTORS, INC.; | Related to Dkt. No. 152<br>Hearing:  September 13, 2018 at 2:30 p.m. |

---

[2]　　The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Fybowin, LLC (3207); Rivertowne Growth Group, LLC (1127); Fybo Management, Inc. (4430); Fybomax, Inc. (8955); and Occupy Rivertowne, LLC (5983).

3

| | |
|---|---|
| GALLI BEER DISTRIBUTING, INC.; GLENWOOD BEER DISTRIBUTORS, INC.; GREENSBURG BEVERAGE, INC.; KEG LOGISTICS; MEADOWBROOK BEVERAGE COMPANY D/B/A STOCKERTOWN BEVERAGE CENTER; MID-STATE BEVERAGE; PAYCOM PAYROLL, LLC; PEPSI BEVERAGES COMPANY; PRAXAIR; PREMIUM BEVERAGE SUPPLY, LTD; SULA SIMCHA UNLEASHED, LLC; SYSCO PITTSBURGH, LLC; UNA INC. T/D/A NITTANY BEVERAGE; WILLAMETTE VALLEY HOPS; CHRISTIAN H. FYKE; JOSEPH BOROS, JR.; AMELIA BOROS, | |
| Respondents. | |

## ORDER OF COURT

AND NOW, this 14th day of September, 2018, after notice and opportunity for a hearing, the Court having considered the Debtors' *Expedited Motion for Entry of an Order (I) Authorizing and Approving Bidding Procedures for the Sale of Assets Free and Clear of Liens, Claims and Encumbrances; (II) Authorizing and Approving Bid Protections and Break Up Fee; (III) Approving Form and Manner of Notice; (IV) Approving Assumption and Assignment Procedures for Executory Contracts and Unexpired Leases; (V) Scheduling an Auction and Sale Hearing; and (VI) Granting Related Relief* (the "Bid Procedures Motion"), it is hereby ORDERED, ADJUDGED and DECREED as follows:

1. The Bid Procedures Motion is APPROVED.

2. As set forth in the Sale Notice,[1] the hearing on the Sale Motion shall be held in Courtroom A, 54th Floor, US Steel Tower, 600 Grant Street, Pittsburgh, Pennsylvania 15219 on

---

1. Capitalized terms not otherwise defined herein shall have the same definitions as ascribed to them in the Bid Procedures Motion.

October 16, 2018 at 10:30 A.M. EST. Any objection relating to the amount necessary to cure any default under executory contracts and/or unexpired leases but be filed with the Clerk for the Bankruptcy Court and a copy sent to the Debtors on or before October 8, 2018. Any objection relating to the Sale must be filed with the Clerk for the Bankruptcy Court and copy sent to the Debtors on or before October 9, 2018. Solely to the extent an objection relates to the conduct of the Auction or the identification of any Successful Bidder(s) and/or any Back-up Bidder(s), said objection must be filed by October 15, 2018.

3. The Bidding Procedures, attached to this Order as Exhibit "A", are hereby APPROVED in their entirety.

4. The Good Faith Deposit of the Back-up Bidders shall be held in escrow until thirty (30) calendar days after the proposed Closing Date. In the event any Successful Bidder does not close and the Court approves a Back-up Bidder, the Debtors shall be authorized to close on the Sale with the Back-up Bidder without further order of the Court.

5. Within three (3) business days ("Mailing Deadline") after the entry of this Order, the Debtors shall serve or caused to be served by first-class mail, postage prepaid, copies of this Order, the Bidding Procedures, the Sale Motion, the Sale Notice, and the Cure Notice upon: (i) the United States Trustee for the Western District of Pennsylvania; (ii) all parties that are known to have asserted a security interest, lien, interest or claim in the Acquired Assets; (iii) all applicable state and local taxing authorities and regulatory agencies, (iv) all parties the Debtors have determined have demonstrated an interest in their assets and financial capability to consummate the sale; (v) all counterparties to executory contracts and/or unexpired leases that may be subject to assumption and assignment in connection with the sales contemplated herein; and (vi) all creditors and parties in interest identified on the creditor mailing matrix.

6. The Court retains jurisdiction over the interpretation, implementation, and enforcement of this Order.

_____
The Honorable Gregory L. Taddonio
United States Bankruptcy Court

Case Administrator to serve: Daniel Schimizzi, Esq.

In re:  Fybowin, LLC, et al.,
Case Number:  18-21803-GLT
Related to Dkt. No. 152

# EXHIBIT "A"

**EXHIBIT B**
**[REVISED PROPOSED] BIDDING PROCEDURES**
**A. INTRODUCTION**

1. DEBTOR ENTITIES SELLING ASSETS: Fybowin, LLC ("Fybowin"), Rivertowne Growth Group, LLC ("RGG"), Fybo Management, Inc. ("Fybo Management"), Fybomax, Inc. ("Fybomax") and Occupy Rivertowne, LLC ("OR") (collectively, the "Debtors").

2. ASSETS TO BE SOLD: The Debtors are selling substantially all of their assets.

   a. Fybowin is selling all of its assets, including, without limitation, all of its rights, title, and interests in its bar/restaurant located at 337 North Shore Drive, Pittsburgh, PA 15212, located between PNC Park and Heinz Field ("RT North Shore").

   b. RGG is selling all of its assets, including, without limitation, all of its rights, title, and interests in the Rivertowne Brewery & Tasting Room located at 5578 Old William Penn Highway, Export, PA 15632 (the "Brewery"). A majority of the brewing assets belong to RGG and are located at the Brewery.

   c. Fybo Management is selling all of its assets, including, without limitation, all of its rights, title, and interests in: (A) the Rivertowne Inn located at 500 Jones Street, Verona, PA 15147 ("RT Verona"); and (B) the North Huntington Pub & Grille located at 14860 U.S. Route 30, North Huntington, PA 15642 ("RT North Huntington").

   d. Fybomax is selling all of its assets, including, without limitation, all of its rights, title, and interests in its bar/restaurant/microbrewery located 312 Center Road, Monroeville, PA 15146 ("RT Monroeville"). RT Monroeville includes, among other things, microbrewery assets.

   e. OR is a holding company with interests in other Debtors. It does not hold physical assets used in the operation of a restaurant, bar, or brewery.

**A BIDDER MAY BID ON ANY GROUP OF ASSETS OR SUBSTANTIALLY ALL OF THE ASSETS. IF YOU ARE SEEKING TO PURCHASE ASSETS FROM MULTIPLE DEBTORS, YOU MUST ALLOCATE VALUE TO THE ASSETS OF EACH DEBTOR FROM WHOM YOU SEEK TO PURCHASE ASSETS. ALL ASSETS ARE PROPOSED TO BE SOLD FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, SUBJECT TO COURT APPROVAL. DETAILS RELATED TO BIDDING PROCEDURES, THE AUCTION AND THE SALE FOLLOW.**

3.  COURT APPROVAL REQUIRED:  These Bidding Procedures have been approved by the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court"), in case no 18-21803, by Order of Court dated September 14, 2018 (the "Bid Procedures Order") and shall govern how the sales are conducted. **However**, any and all sales shall be subject to Bankruptcy Court approval at the conclusion of a sale hearing (the "Sale Hearing"). *The Sale Hearing is currently scheduled for October 16, 2018 at _____ __m, before Judge Gregory L. Taddonio in Courtroom A, 54th Floor, U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219.*

## B. KEY DATES

| Item | Tentative Date |
| --- | --- |
| **Bidding Procedures Hearing Date** | **September 13, 2018 at 2:30 PM** |
| Deadline to Serve Sale Papers/Cure Notice | September 17, 2018, which is three days following the entry of the Bid Procedures Order |
| Cure Objection Deadline | October 8, 2018 |
| General Sale Motion Objection Deadline | October 9, 2018 |
| Bid Deadline | October 10, 2018 at 5:00 PM EST |
| Designation of Qualified Bids | October 11, 2018 at 12:00 PM EST |
| Auction, Designation of Successful Bidder(s) | October 12, 2018 at 9:30 AM |
| Report of Auction, Deadline to Object to Conduct of Auction/Successful Bidder | October 15, 2018 |
| Sale Hearing | October 16, 2018 at _____ |
| Deadline to Return Good Faith Deposits | October 17, 2018 (except Back-up Bids) |

## C. STALKING HORSE BIDDER

1.  RGG has identified Gordon Brothers Commercial & Industrial, LLC (and potentially a designee) as its stalking horse bidder (the "Stalking Horse Bidder") with respect to the assets of RGG.  RGG proposes to sell those assets pursuant to the Asset Purchase Agreement (the "GB APA") attached as Exhibit A to the sale motion filed at docket no _____.  A copy of the GB APA can be obtained from counsel for the Debtors upon written request.

2.  The Stalking Horse Bidder intends to acquire the assets of RGG and certain non-debtor assets, which collectively are referred to as the Acquired Assets in the GB APA, and assume certain liabilities (as more fully set forth in the GB APA) with an initial cash bid of $1,350,000.00 (the "Stalking Horse Bid") plus assumed liabilities.

3.  As set forth in the GB APA, the Stalking Horse Bidder may designate RT North Shore, RT Verona, RT North Huntington, and/or RT Monroeville to be included in its purchase pursuant to the GB APA (each designated location being referred to as a "Designated Restaurant"), subject to an increase in purchase price based upon an arms-length negotiation between the

4

Debtors-seller and the Stalking Horse Bidder.  In each instance, a price shall be allocated to the assets in/related to the Designated Restaurant, and be subject to these Bidding Procedures, which provide for competitive bidding.

4.      Notwithstanding anything to the contrary herein, the Stalking Horse Bidder shall be deemed a Qualified Bidder (defined below), and the Stalking Horse Bid shall be deemed a Qualified Bid (defined below) for all purposes.

5.      The Stalking Horse Bidder is entitled to a Break Up Fee with respect to the RGG assets, which will be the lesser of: (i) the actual and reasonable out-of-pocket expenses, including reasonable attorneys' fees, incurred by the Stalking Horse Bidder in connection with the sale; or (ii) three percent (3.00%) of the Stalking Horse Bid.  The Break Up Fee shall only apply to the amount of the Stalking Horse Bid.  The Break Up Fee shall only be payable if the Stalking Horse Bidder is not the Successful Bidder at the Auction (defined below), and the Successful Bidder (if not the Stalking Horse Bidder) actually closes on the sale contemplated in the GB APA.  In addition the Break Up Fee shall be deemed an administrative expense claim under section 503(b) of the Bankruptcy Code, and shall be paid in accordance with Section 9.2(d) of the GB APA; provided, however, that to the extent the Break Up Fee is for the actual and reasonable out-of-pocket expenses, including reasonable attorneys' fees, incurred by the Stalking Horse Bidder in connection with the sale, the Break Up Fee shall be subject to review by the Bankruptcy Court and payable upon the entry of an order approving the Break Up Fee.

### D.  PARTICIPATION REQUIREMENTS

1.      To participate in the sale process and to otherwise be considered for any purpose hereunder, each Bid (defined below) and each bidder ("Potential Bidder") must be determined by the Debtors (to which their Bid relates) to have satisfactorily provided them with each of the following on or before the Bidding Deadline (the "Participant Requirements"):

   a. Identification of Potential Bidder. Identification of the Potential Bidder and any Principals (defined below), and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated transaction;

   b. Confidentiality Agreement. An executed confidentiality agreement in form and substance acceptable to the Debtors and their respective counsel; and

   c. Proof of Financial Ability to Perform. Written evidence upon which the Debtors may reasonably conclude, in their discretion, that the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts and unexpired leases to be assumed in such contemplated transaction.

### E. ACCESS TO DUE DILIGENCE MATERIALS

1.      Only Potential Bidders that satisfy the Participant Requirements are eligible to receive due diligence access or additional non-public information.  If the Debtors determine that a Potential Bidder who has satisfied the Participant Requirements ultimately does not constitute as a Qualified Bidder (defined below), then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate, notwithstanding such Potential Bidder's prior right to access such information.  The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from those who have satisfied the Participant Requirements. The Debtors shall not be obligated to furnish any due diligence information after the Bidding Deadline.  Neither the Debtors nor their professionals are responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders or Qualified Bidders in connection with the sale of the Debtors' assets.

### F. BIDDING DEADLINE

1.      All offers, solicitations, or proposals (each a "Bid") must be submitted in writing so that they are actually received no later than October 10, 2018 at 5:00 PM EST (the "Bidding Deadline").

2.      Prior to the Bidding Deadline, a Qualified Bidder (defined below) that wants to make a Bid shall deliver written or electronic copies of its Bid to:

Whiteford Taylor & Preston
200 First Avenue
Pittsburgh, PA 15222
Attn: Michael J. Roeschenthaler (mroeschenthaler@wtplaw.com) and Daniel Schimizzi (dschimizzi@wtplaw.com) (collectively, the "Notice Party")

3.      A Bid received after the Bidding Deadline shall not constitute a Qualified Bid. Interested bidders should contact the Notice Party to request information about the qualification process, a copy of the form asset purchase agreement, and information in connection with their due diligence.

### G. DESIGNATION AS A QUALIFIED BIDDER AND REQUIREMENTS FOR A QUALIFIED BID

1.      "Qualified Bidder" is a Potential Bidder that delivers a Qualified Bid.

2.      A "Qualified Bid" is a timely-submitted bid that satisfies the following requirements:

a. <u>Written Submission of Agreement and Commitment to Close</u>. If a Qualified Bidder is submitting a Bid on the assets of RGG or a bid that includes the assets of RGG, Qualified Bidders must submit by the Bid Deadline a binding offer in the form of an executed asset purchase agreement (including all exhibits and schedules thereto) (the "<u>Agreement</u>"), a "blackline" or otherwise marked copy of the Agreement reflecting the differences between the Agreement and the GB APA. Alternatively, if the Qualified Bidder is submitting a bid for assets other than the RGG assets, the Qualified Bidder shall submit a sale/purchase agreement setting forth the terms and conditions upon which the Qualified Bidder is prepared to close, which agreement shall include, among other things, the name of the Debtors, the assets to be acquired, the contracts/leases to be assumed, and the sale consideration/purchase price (which may include the assumption of liabilities).

   i. Proposed changes to the GB APA for a Qualified Bidder seeking to acquire the RGG assets are limited to: (i) the name of the purchaser; (ii) the amount of total consideration; (iii) the components of total consideration; (iv) the executory contracts and/or leases which will be Acquired Contracts; (v) elimination of conditions precedent to closing; and (vi) other provisions which serve to enhance the Agreement for the benefit of the bankruptcy estate.

b. <u>Irrevocable</u>. A Bid must be irrevocable until the latter of October 17, 2018 or the conclusion of the Sale Hearing, unless it is the bid of the Back-up Bidders in which case it shall remain irrevocable for at least thirty (30) days following the Closing Date.

c. <u>Contingencies</u>. A Bid for the Acquired Assets may not be conditioned on obtaining financing or any internal approval or on the outcome or review of due diligence. Any other contingencies associated with a Bid may not be more burdensome than those set forth in the GB APA; <u>provided</u>, <u>however</u>, that if the Bid is for assets other than the RGG assets, the Debtors shall determine, in their sole discretion and in an exercise of their business judgment in accordance with their fiduciary duties owed to their respective Estates, whether any contingency is acceptable for the sale of such assets.

d. <u>Financing Sources</u>. A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate a sale satisfactory to the Debtors, with appropriate contact information for such financing sources.

e. <u>No Fees Payable to Qualified Bidder</u>. A Bid may not request or entitle the Qualified Bidder to any break-up fee, topping fee, expense reimbursement or similar type of payment except as set forth herein. Further, by submitting a Bid, a Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code or in any way related to the submission of its Bid or the Bidding Procedures.

    f. <u>Good-Faith Deposit</u>. If a Bid includes the assets of RGG in part or in conjunction with other Debtors' assets, the good faith deposit shall be $235,500 (the amount of the Stalking Horse Bidder's deposit plus an estimated Break Up Fee of $40,500 (3% of $1,350,000), plus 15% of the purchase price amount for the assets of other Debtors. Any other Bid that excludes the RGG assets must be accompanied by a deposit in the amount equal to fifteen percent (15%) of the Bid. Deposits can be remitted to Whiteford, Taylor, & Preston, LLP, by wire, in the form of certified check, or cash. All good-faith deposits will be held in escrow in accordance with the Bidding Procedures.

    g. <u>Minimum Overbid for the RGG Assets</u>. If a Bid includes the assets of RGG in part or in conjunction with other Debtors' assets, the aggregate consideration proposed by the Bid for those assets must equal or exceed $1,415,500, which is the sum of the purchase price provided for in the GB APA, plus the Break Up Fee (calculated at 3% of $1,350,000.00), plus $25,000 (the "<u>Initial Minimum Overbid Increment</u>"). Subsequent bids at the auction shall continue in increments of at least $25,000.

    h. <u>Bid for Assets Other than the RGG Assets</u>. With respect to the Debtors' non-real estate assets associated with the RT Monroeville, RT North Shore, RT Verona, RT North Huntington, or OR, a bid shall include:

        i. a cash offer for the personal property;

        ii. if a real property lease or executory contract is to be assumed and assigned, a statement identifying each such lease or contract, the cure amount to be paid (subject to potential objections by the contract/lease counterparty), and an affirmative statement that adequate assurance of future performance shall be demonstrated at the Sale Hearing; and

        iii. if the real property is proposed to be purchased, the amount of sale consideration being allocated to the real property.

<u>NOTE: EACH DEBTOR WILL EXERCISE ITS FIDUCIARY DUTY TO ITS RESPECTIVE BANKRUPTCY ESTATE WHEN CONSIDERING WHETHER TO ACCEPT OR REJECT A BID. IF A BID FOR THE DEBTORS' NON-REAL ESTATE ASSETS ASSOCIATED WITH RT NORTH SHORE, RT VERONA, RT NORTH HUNTINGTON, RT MONROEVILLE, OR OR DOES NOT YIELD A MEANINGFUL BENEFIT TO THE ESTATE OF THE DEBTOR RECEIVING THE BID, EACH DEBTOR HAS THE RIGHT TO REJECT THE OFFER IN AN EXERCISE OF ITS SOUND AND REASONED BUSINESS JUDGMENT, NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE</u>

8

CONTRARY, IN WHICH CASE THE BID WILL NOT BECOME A QUALIFIED BID.

   i. <u>Corporate Authority</u>. All Bids must be accompanied by written evidence from the Potential Bidder's authorized representative providing approval of the contemplated transaction; <u>provided</u>, <u>however</u>, that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction (an "<u>Acquisition Entity</u>"), then the Potential Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder (the "<u>Principals</u>");

   j. Bids must be timely submitted by the Bid Deadline.

3. Upon receipt from a Potential Bidder of the information described above, as soon as is practicable, the Debtors will determine and notify the Potential Bidder of whether such Potential Bidder is a Qualified Bidder, but no later than October 11, 2018, at 12:00 PM EST.

4. For qualification purposes, the GB APA shall constitute a designation of the Stalking Horse Bid with regard to offers relating to the RGG assets and is a Qualified Bid, subject to its execution of the GB APA and payment of the good faith deposit to counsel for the Debtors.

5. If any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good-Faith Deposit by October 12, 2018.

## H. DUE DILIGENCE PRODUCED FROM BIDDERS

1. Each Potential Bidder and Qualified Bidder (collectively, a "<u>Bidder</u>") shall comply with all reasonable requests for additional information and due diligence access by the Debtors and their respective advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that a Bid made by a Qualified Bidder is not a Qualified Bid.

## I. BIDDING PROCESS

1. The Debtors, in consultation with their advisors, in an exercise of their sound business judgment and in furtherance of their fiduciary duties owed to the estate, shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions herein; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the assets. Subject

9

to the Bid Procedures Order, the Debtors shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein), that will better promote the goals of the Bidding Process.

### J. NO QUALIFIED BID

1.       If the Debtors do not receive more than one Qualified Bid to compete with the Stalking Horse Bid or otherwise receive a bid that would give rise to a competitive auction for the RGG assets or other Debtor assets, the Debtors shall report the same to the Bankruptcy Court and proceed to the Sale Hearing.

### K. AUCTION

1.       If the Debtors receive more than one Qualified Bid (other than the Stalking Horse Bid), and the Qualified Bids are received by the Bid Deadline, an auction (the "Auction") will be held to determine the highest and/or best Qualified Bid with respect to the Debtors' assets. The Auction will be conducted on October 12, 2018 at 9:30 (EST) at the office of counsel for the Debtors, Whiteford, Taylor & Preston, LLP, 200 First Avenue, Third Floor, Pittsburgh, PA 15222 in accordance with the following procedures:

   a. Participation at the Auction. Only the following persons shall be entitled to attend the Auction (i) professionals and members of the Debtors, (ii) a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction and its authorized representative(s), and (iii) the Stalking Horse Bidder and its authorized representative(s).

   b. Starting Bid. During the Auction, bidding for RGG assets, alone or as part of another Bid, shall begin initially with the Stalking Horse Bid, then the Initial Minimum Overbid Increment, and subsequently continue in minimum increments of at least $25,000. Bidding for any assets other than the RGG assets shall begin initially with the Qualified Bid for such asset and subsequently continue in minimum increments of at least fifteen percent (15%) of the Bid.

   c. Whiteford, Taylor & Preston Will Conduct the Auction: At the start of the Auction, the Debtors shall describe: (i) the terms of the Stalking Horse Bid; (ii) the terms of the highest and/or best Bid for non-RGG assets, and (iii) the initial overbid increment for each Debtor's assets. All Bids made thereafter shall be overbids (as defined below), and shall be made and received on an "open cry" basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. A transcript of all Bids made and announced at the Auction, including Stalking Horse Bid, all Overbids and the Successful Bid, will be maintained by a court reporter selected by the Debtors.

10

    d. <u>Terms of Overbids</u>. An "Overbid" is any Bid made at the Auction subsequent to Debtors' announcement of the highest and/or best Qualified Bid. To submit an Overbid for purposes of the Auction, a Qualified Bidder must comply with the following conditions, which includes the requirement that each Qualified Bidder announce its intention to remain in the Auction after each round of bidding:

        i. <u>Minimum Overbid Increment.</u> Any Overbid for the RGG assets, over and above the Stalking Bid and the Initial Minimum Overbid Increment, shall be made in increments of at least $25,000 (or such other amount determined by the Debtors to facilitate the Auction). Any Overbid for any assets other than the RGG assets shall be made in increments of at least fifteen percent (15%) of the last Bid. Additional consideration must be comprised only of cash consideration.

        ii. <u>Remaining Terms are the same as for Qualified Bids</u> – Except as modified herein, any Overbid must comply with the conditions for a Qualified Bid set forth above; <u>provided</u>, <u>however</u>, that the Bidding Deadline and the Initial Minimum Overbid Increment shall not apply. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a higher Qualified Bid as an overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

        iii. To the extent not previously provided, a Qualified Bidder submitting an overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement acceptable to the Debtors) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid upon request by Debtors.

    e. <u>Closing the Auction</u>. At conclusion of the bidding, the Auction shall be closed, and the highest and/or best offer for the RGG assets, as well as the highest and/or best offers for any assets other than the RGG assets, shall be identified (each, a "<u>Successful Bid</u>") along with the entities submitting such Bids (each, a "<u>Successful Bidder</u>"). The next highest and otherwise best offer after each Successful Bid shall also be identified (each, a "<u>Back-up Bid</u>") and the Qualified Bidders making such Back-up Bids (each, a "<u>Back-up Bidder</u>") shall be notified of such determination and shall be required to remain as a Back-up Bidder. The Debtors shall hold the Good Faith Deposit of the Back-up Bidders in escrow, for thirty (30) calendar days past the proposed Closing Date. In the event the Successful Bidders do not close on the transactions for which the Debtors have identified them as Successful Bidders, and provided the Court

        approves the Back-up Bidders at the Sale Hearing, the Debtors shall be authorized to close with the Back-up Bidders without further order of court.

    f. <u>Break Up Fee</u>. Break Up Fee will only apply to the Stalking Horse Bidder based on the Stalking Horse Bid for the assets of RGG and will not apply to any increase of the Stalking Horse Bid to the extent the Stalking Horse Bidder seeks to acquire a Designated Restaurant. **No other Bidder shall be entitled to a break-up fee.** The Stalking Horse Bidder shall be entitled to seek expense reimbursement for the lesser of: (i) the actual and reasonable out-of-pocket expenses, including reasonable attorneys' fees, incurred by the Stalking Horse Bidder in connection with the sale; or (ii) three percent (3.00%) of the Stalking Horse Bid ($1,350,000.00). The Break Up Fee shall only be payable if the Stalking Horse Bidder is ready, willing and able to close, is not the Successful Bidder at the auction, and the Successful Bidder (if not the Stalking Horse Bidder) actually closes on the sale. To the extent the Break Up Fee is for the actual and reasonable out-of-pocket expenses, including reasonable attorneys' fees, incurred by the Stalking Horse Bidder in connection with the sale, the Break Up Fee shall be subject to review by the Bankruptcy Court and payable upon the entry of an order approving the Break Up Fee.

    2.    <u>Consent to Jurisdiction as Condition to Bid</u>. All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's contemplated transaction documents, as applicable.

### L. ACCEPTANCE OF SUCCESSFUL BIDS AND SALE HEARING

    1.    The Debtors will request at the Sale Hearing that the Bankruptcy Court enter an order authorizing and approving: (i) the sale of the RGG assets to the Successful Bidder and, on a contingent basis, the Back-up Bidder; and (ii) the sale of any assets other than the RGG Assets to the applicable Successful Bidder and, on a contingent basis, the applicable Back-up Bidder. By no later than October 9, 2018, all objections to relief requested at the Sale Hearing shall be filed and served in the manner prescribed in the notice of the Sale Motion. All objections solely with respect to the conduct of the Auction and the identification of the Successful Bidders shall be filed by October 15, 2018.

### M. AS IS, WHERE IS

    1.    The sale of any of the Debtors' assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates, except to the extent set forth in the GB APA or the agreement of another Successful Bidder modifying the GB APA (as may be agreed to by the Debtors whose assets are being sold). Each Qualified Bidder (including the Stalking Horse Bidder) shall be deemed to acknowledge and

12

represent that it has had an opportunity to conduct any and all due diligence regarding the assets prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidding Procedures or: (i) as to Stalking Horse Bidder, the terms of the sale of the RGG assets shall be set forth in the GB APA, or (ii) as to other Successful Bidders, the terms of the sale of the assets shall be set forth in the applicable agreement.

### N.  FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

1.     Subject to the entry of an appropriate order granting the relief requested in the Sale Motion, and except as otherwise provided in the GB APA or other Successful Bidders' asset purchase agreement, all of the Debtors' right, title and interest in and to the assets shall be sold free and clear of all liens, claims, encumbrances and interests.

### O.  RETURN OF GOOD FAITH DEPOSIT

1.     The Good Faith Deposits of the Successful Bidders shall be applied to the purchase price of such transaction at Closing.  The Good Faith Deposits of the Back-up Bidders shall be held until thirty (30) calendar days of the proposed Closing Date.  Good Faith Deposits of all other Qualified Bidders shall be held in an escrow account until October 17, 2018, at which time the Good Faith Deposits will be returned to the respective Qualified Bidders. If any of the Successful Bidders fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good Faith Deposits as part of their damages resulting from the breach or failure to perform by the Successful Bidders. Provided the Court approves such Back-up Bidder at the Sale Hearing, the Debtors shall be authorized to close on the Sale with the appropriate Back-up Bidder.

### P.  MODIFICATION AND RESERVATIONS

1.     The Debtors, in exercise of their sound business judgment and in accordance with the fiduciary duties owed to their estates, may (i) determine which Qualified Bid, if any, is the highest, best, and/or otherwise financially superior offer; and (ii) reject at any time before entry of an order approving a Qualified Bid, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of sale or (c) contrary to the best interests of their Debtors, their estates and their creditors.

2.     At or before the Sale Hearing, the Debtors may impose such other terms and conditions as the Debtors may determine to be in the best interests of the their respective estates,

their creditors and other parties-in-interest that are not inconsistent with any of the procedures of the Bid Procedures Order or these Bidding Procedures.

## Q. RESERVATION OF RIGHTS

1.  Subject to the Bid Procedures Order, the Debtors reserve the right, in their sole discretion after consultation with their professionals, in exercise of their sound business judgment and in accordance with the fiduciary duties owed to their estates, to: (i) determine which Potential Bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bid Procedures Order or the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (iv) waive terms and conditions set forth herein with respect to any or all Potential Bidders; (v) impose additional terms and conditions with respect to any or all Potential Bidders; and (vi) adjourn the Auction and/or Sale Hearing in open court without further notice. Without limiting the generality of the foregoing, the Debtors shall distribute the Agreements submitted with any Qualified Bids to other Qualified Bidders that have submitted Qualified Bids for the same assets prior to the Auction.